## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

ALICIA Y. ALFRED,

        **Plaintiff,**

    v.

                                     Civil Action No. 05-1446 (PLF)

DISTRICT OF COLUMBIA,

        **Defendant &**
        **Third Party Plaintiff,**

    v.

THE LOJACK COMPANY, *et al.,*

        **Third Party Defendants.**

### DEFENDANT/THIRD PARTY PLAINTIFF DISTRICT OF COLUMBIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THIRD PARTY DEFENDANT LOJACK COMPANY'S MOTION FOR SUMMARY JUDGMENT

Third Party Defendant LoJack Company has moved herein for summary judgment. The District hereby opposes the motion inasmuch as there are material facts in dispute herein. Pursuant to Fed. R. Civ. P. 56, defendant/third party plaintiff District of Columbia opposes the Motion for Summary Judgment for the following reasons: (1) It was the responsibility of the Prince Georges County Police Department to notify the National Crime Information Center ("NCIC") and the Washington Area Law Enforcement System ("WALES") that plaintiff's stolen vehicle had been recovered. After the Prince Georges County Police made such notification, it was the responsibility of the LoJack Company to turn off the emitting signal on plaintiff's vehicle. (2) The discovery period is still open. All of the facts of this case have not been resolved. The parties need to avail

themselves of discovery to resolve unanswered questions before filing dispositive motions. Given the existence of disputed material facts, plaintiff's Motion for Summary Judgment must fail.

### Standard of Review

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. SCR-Civil 56(c). The substantive law identifies which facts are material. Only disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Metastorm, Inc. v. Gartner Group, Inc.*, 28 F. Supp. 2d 665, 668 (D.D.C., 1998), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). In determining whether a genuine dispute about a material fact exists, all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the non-moving party. If the moving party demonstrates that no genuine issue of material fact exists the non-moving party must show, by specific factual allegations, the existence of a genuine issue of material fact. *Id.* at 668, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548. (1986). The non-moving party may not rely upon the mere allegations or denials in its pleadings as support for its position; instead, the party opposing summary judgment must establish specific facts through affidavits based upon personal knowledge. *Guardian Life Ins. Co. of Am. v. Madole*, 48 F. Supp. 2d 26, 28-29 (D.D.C., 1999), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

### Facts

Plaintiff asserts that, on April 25, 2005, she discovered at her home in Suitland, Maryland that her car had been stolen, and that she, then, reported the theft to the Prince Georges County Police Department. (Amended Complaint, ¶¶ 7 and 8.) The Prince Georges County Police entered plaintiff's vehicle into the interstate computer systems as "stolen." (Amended Complaint, ¶ 12.)

On April 25, 2005, at about 9:48 p.m., District of Columbia Metropolitan Police Officer Michael Fanone telephoned plaintiff and informed her of the recovery of her vehicle at 700 14th Street, N.W., in Washington, D.C. See the Amended Complaint, ¶ 13; the Metropolitan Police Department Event Chronology Report, which shows the recovery of the vehicle on April 25, 2005 at 21:48:48 hours or 9:48 p.m., Attachment 2; and the Affidavit of Officer Michael F. Fanone, Attachment 3.[1]   Officer Fanone and his partner, Officer Im Sang, then waited for plaintiff to arrive on the scene. At the scene of the recovery, plaintiff identified the person who stole her car as her brother and asked that he be arrested. The District of Columbia Metropolitan Police Officers did arrest plaintiff's brother for the Unauthorized Use of a Vehicle. *Id.* ¶ 3. The recovery and the arrest ended at April 25, 2005 at 22:51:15, or 10:51 p.m. See the Event Chronology Report, Attachment 2.

Plaintiff alleges in her Amended Complaint that shortly after midnight on April 26, 2005, two other District of Columbia police officers told her that her vehicle was still emitting the LoJack signal as stolen. (Amended Complaint, ¶¶ 26 through 30.)

Nevertheless, on the following day, April 26, 2005, plaintiff drove her vehicle to work in Arlington County, Virginia. At approximately 11:15 a.m., plaintiff left her workplace and began

---

[1] The hard copy original affidavits of Officer Fanone and Sergeant Curry will be hand-delivered to the Court for filing.

to drive her car to get lunch. At that time, the Arlington County Police Department detained her because her vehicle was still emitting the LoJack signal as stolen. (Amended Complaint, ¶¶ 36 through 128.) Discovery is necessary with regard to an NCIC printout in this case, which has a date on it of April 26, 2005, and a time of 12:29 p.m. (Attachment 1).

*Argument*

## I. THERE IS SUFFICIENT EVIDENCE THAT LOJACK IS LIABLE FOR ANY ALLEGED INJURY TO PLAINTIFF.

It was the responsibility of Prince Georges County to report plaintiff's vehicle to the NCIC and WALES as recovered, and then, it was the responsibility of LoJack to turn off the emitting signal. See Section 4.1 of the NCIC 2000 Operating Manual (December, 1999), Attachment 4, and the Affidavit of Sergeant Irving Curry, ¶¶ 8, 9, 10 and 11, Attachment 5.[2]

LoJack is a small, silent and hidden vehicle tracking device, which allows stolen vehicles to be tracked and recovered by police departments.[3] When a LoJack owner reports his or her vehicle stolen, the police can activate the tracking unit in their vehicle, and follow the tracking signal emitted by the tracking device within a two to three mile radius to locate the stolen vehicle.[4] LoJack tracking computer units are installed in some District of Columbia Metropolitan Police Department vehicles. Instead of the global positioning system ("GPS"), LoJack uses radio frequency to better assist in locating vehicles that are hidden behind walls, buildings, garages or other dense areas.[5] LoJack databases and software are integrated into the crime computers shared by law enforcement in the Washington Metropolitan Area, which includes Washington, D.C., Maryland and Virginia. The Lojack device is activated by LoJack

---

[2] The hard copy original affidavits of Officer Fanone and Sergeant Curry will be hand-delivered to the Court for filing.
[3] See, *e.g.*, Wikipedia, en.wikipedia.org/wiki/**LoJack**; and http://www.lojack.com/what/index.cfm, **What Is a LoJack?**
[4] *Id.*

after the police agency, which received the stolen vehicle report, informed Teletype of that particular police department, and Teletype conveyed the stolen vehicle category to the WALES and the NCIC computer systems, which are nationwide, law enforcement systems used in the District of Columbia, Maryland and Virginia.

The MPD Communications dispatcher informs over the radio an officer, who recovers a stolen vehicle, whether the original report of the stolen vehicle is local or interstate. "Local" means that the vehicle was stolen in the District of Columbia and "interstate" means that the vehicle was stolen in a jurisdiction outside of the District of Columbia. See ¶ 3 of the Affidavit of Sergeant Irving Curry, Attachment 5. The officer then either has the vehicle towed or released to the owner. Thereafter, the recovering officer notifies Teletype by telephone of the facts surrounding the recovery of the vehicle, such as the type of vehicle, the make and model, the tag number, whether any arrests were made on the scene, whether the owner was notified and took possession of the vehicle, or whether the vehicle was towed, towed by whom and to where. Teletype does not record the vehicle owner's race. See ¶ 4 of the Affidavit of Sergeant Irving Curry, Attachment 5. It is not the customary practice of Teletype to record or to make a record of such telephone calls from reporting officers. Teletype then enters the information provided into the NCIC and WALES computer system and waits for a return message from the originating jurisdiction, here Prince Georges County. *Id.* ¶ 4. Prince Georges County is considered the originating agency because that is where Alicia Y. Alfred, the plaintiff in this case, reported that her vehicle was stolen. *Id.* ¶ 4.

Within one hour of having been notified of the recovery, Prince Georges County must notify NCIC and WALES of the recovery. *Id.* ¶ 5. If there is no response in one hour, Teletype sends the message again, and waits another hour. *Id.* ¶ 5. If the originating agency never

---

[5] *Id.*

responds after the second notification, a third message is then sent, which triggers an automatic notice to the FBI of the non-responsiveness. The FBI then would contact the originating agency, Prince Georges County, directly. *Id.* ¶ 5. Through the NCIC and WALES system, the originating jurisdiction, Prince Georges County was notified in this case of the recovery. *Id.* ¶ 5. It is the responsibility of the issuing agency where the vehicle was stolen to take that information out of NCIC and WALES by reporting that the vehicle has been recovered. *Id.* ¶ 9. Because Prince Georges County, was the agency which put the vehicle into NCIC and WALES when plaintiff first reported it stolen, then Prince Georges County had to be the agency that took the vehicle out of the system by noting its recovery into NCIC and WALES. *Id.* ¶ 6. After that occurred, it was the responsibility of LoJack to turn off the emitting signal. *Id.* ¶ 11.

In this particular case, the plaintiff reported the theft of her vehicle to the Prince Georges County Police, which entered it into NCIC and WALES as "stolen." Thus, here, it was the responsibility of the Prince Georges County Police Department to notify NCIC and WALES that the plaintiff's vehicle had been recovered on April 25, 2005. Once the Prince Georges County Police Department notified WALES and NCIC of the recovery of plaintiff's vehicle, it was then the responsibility of the LoJack Company to turn off the emitting signal on the plaintiff's vehicle. *Id.* ¶¶ 8, 9, 10 and 11.

Officer Michael Fanone's customary practice was to call such recoveries in to Teletype upon returning to the police station. He does not recall any variance in that routine regarding this vehicle recovery. See the Affidavit of Officer Michael F. Fanone, Attachment 3. Teletype customarily immediately conveys this information to the WALES and the NCIC, if local, that is confined to the District of Columbia, or to the particular jurisdiction involved if the matter is interstate. In this case, Teletype notified Prince Georges County of the recovery because Prince

Georges County, the agency which put the vehicle into the WALES and the NCIC, when plaintiff first reported it stolen, must be the agency that takes the vehicle out of the system by noting its recovery into the WALES and the NCIC. See Attachment 4, NCIC 2000 Operating Manual, Section 4.1 (December, 1999) and Attachment 5, the Affidavit of Sergeant Irving Curry.

Prince Georges County must respond to the District of Columbia Teletype within ten minutes of having been notified of the recovery, and Prince Georges County must notify the WALES and the NCIC of the recovery within one hour of notification from Teletype. Once Prince Georges County puts the vehicle into the WALES and the NCIC as recovered, the next step is for LoJack to turn off the emitting signal. See Attachment 5, the Affidavit of Sergeant Irving Curry.

As to which jurisdiction or agency is the one authorized to remove the "stolen" status from a vehicle, the NCIC 2000 Operating Manual provides that the originating agency is the one that must do that:

> **SECTION 4 – CANCELLATION**
> **4.1    WHEN TO USE A CANCELLATION MESSAGE**
> Cancellation of a record is restricted to the agency that entered the record…
> The MKE XV must be used to cancel a stolen vehicle record …

*Id.* at 34.

In this particular case, the plaintiff reported the theft of her vehicle to the Prince Georges County Police, on April 25, 2005, and the Prince Georges County Police entered plaintiff's vehicle into the interstate computer systems as "stolen." It is the responsibility of the issuing agency of information that a vehicle was stolen to take that information out of the system by reporting that the vehicle has been recovered. See Attachment 4, NCIC 2000 Operating Manual, Section 4.1 (December, 1999) and Attachment 5, the Affidavit of Sergeant Irving Curry. After Officer Fanone's tour of duty ended at approximately 10:30 p.m., he telephoned all such

recoveries to Teletype when he returned to the police station. See his affidavit, Attachment 3. Sergeant Curry states that Teletype immediately conveys this information to the jurisdiction that must contact the WALES and the NCIC if the matter is interstate, as here. Here, it was the responsibility of the Prince Georges County Police Department to notify the WALES and the NCIC that the plaintiff's vehicle had been recovered on April 25, 2005. Once the Prince Georges County Police Department notified the WALES and the NCIC of the recovery of plaintiff's vehicle, it was then the responsibility of the LoJack Company to turn off the emitting signal on the plaintiff's vehicle. See Attachment 4, the Affidavit of Sergeant Irving Curry.

## II.    DISCOVERY IS STILL OPEN AS TO MATERIAL ISSUES, WHICH REMAIN IN DISPUTE.

Discovery closes in this case on June 29, 2007; thus, it is available as to the genuine issues of material fact which are present herein, and which prevent the entry of summary judgment. In addition, the parties should be able to complete written and oral discovery before summary judgment is decided.

## III.    CONCLUSION

WHEREFORE, for the foregoing reasons and pursuant to SCR-Civil 56, the Defendant /Third Party Plaintiff District of Columbia hereby moves this Honorable Court to deny Third Party Defendant LoJack Company's Motion for Summary Judgment..

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____ /s/ Nicole L. Lynch _____
NICOLE L. LYNCH [471953]

Section Chief, Civil Litigation Division
General Litigation, Section II

By:         /s/ Urenthea McQuinn

URENTHEA McQUINN [D.C. Bar #182253]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C.  20001
(202) 724-6646
(202) 727-0431 (Fax)
urenthea.mcquinn@dc.gov

June 1, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALICIA Y. ALFRED,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 05-1446 (PLF)** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant &**<br>**Third Party Plaintiff,** | |
| **v.** | |
| **THE LOJACK COMPANY,** *et al.,* | |
| **Third Party Defendants.** | |

## DEFENDANT/THIRD PARTY PLAINTIFF DISTRICT OF COLUMBIA'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS A GENUINE DISPUTE

In response to LoJack Company's Statement of Undisputed Facts, the District responds as follows:

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Disputed. This statement is misleading by its omission that it was the responsibility of the Prince Georges County Police Department to alert the NCIC and the LoJack Sector Activation Computer System ("SAC"). See Attachment 5, the Affidavit of Sergeant Irving Curry.

10

5. Disputed. The Prince Georges County Police Department could not have reported plaintiff's vehicle as recovered on April 25, 2005 at 12:31 p.m. because the recovery had not occurred at that time. Officer Fanone called plaintiff to tell her of the recovery of her vehicle at about 9:48 p.m. on the night of April 25, 2005. Discovery is necessary with regard to an NCIC printout in this case, which has a date on it of April 26, 2005, and a time of 12:29 p.m. (Attachment 1).

6. Disputed.

7. Disputed.

8. Unknown. Discovery would be required to respond to this.

Further, in support of its Opposition to Plaintiff's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, the District of Columbia ("the District") hereby submits the following Statement of Material Facts As to Which There Is a Genuine Dispute.

1. It was the responsibility of the Prince Georges County Police Department to notify the NCIC and WALES that the plaintiff's vehicle had been recovered on April 25, 2005. See the Affidavit of Sergeant Irving Curry, ¶¶ 8, 9, 10 and 11, Attachment 5.

2. Once the Prince Georges County Police Department notified NCIC and WALES of the recovery of plaintiff's vehicle, it was then the responsibility of the LoJack Company to turn off the emitting signal on the plaintiff's vehicle. See the Affidavit of Sergeant Irving Curry, ¶¶ 8, 9, 10 and 11, Attachment 5.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/ Nicole L. L ynch_____

NICOLE L. LYNCH [471953]
Section Chief, Civil Litigation Division
General Litigation, Section II

By:        _____/s/ Urenthea McQuinn_____

URENTHEA McQUINN [D.C. Bar #182253]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C.  20001
(202) 724-6646
(202) 727-0431 (Fax)
urenthea.mcquinn@dc.gov

June 1, 2007

# ATTACHMENT 1

ART/X84VPW/FL/05/PC/3

MISCELLANEOUS VEHICLE RECORD                    IND= 04/26/05 INT= 12:29 WALES ONLY
EX   DCMPD00T1 X84VPW    FL 05 PC SAJDA01C1YFL44194 00 JAGU
        042605              INER MD REC 052761
   WIN/V0072389
FRM/700 BLK 14TH ST NW
LOT/RELEASE TO OWNER

WALES RECORD FOUND      *** NCIC QV MSG   #41904        SENT BY PD0557 ***
                        *** NLET RQ MSG   #41904        SENT BY PD0557 ***

*** NCIC RESPONSE #41904        RCVD FOR DCMPD00T1/T6VA/PD0557 ***


DCMPD00T1
MKE/LOCATED STOLEN VEHICLE
ORI/MD0172100 LIC/X84VPW LIS/FL LIY/2005 LIT/PC
VIN/SAJDA01C1YFL44194 VYR/2000
VMA/JAGU VST/4D VCC/BLK DOT/20050424
OCA/051150247 20050426 DCMPD00T1 052761
NIC/V147366865 DTE/20050425 1743 EDT
ORI IS PRINCE GEORGES COUNTY POLICE DEPARTMENT 301 499-8113
IMMED CONFIRM RECORD WITH ORI


Date: 4/26/2005 Time: 12:34:01 PM

ART/X84VPW/FL/05/PC/3

MISCELLANEOUS VEHICLE RECORD                    IND= 04/26/05 INT= 12:29 WALES ONLY
EX    DCMPD00T1 X84VPW    FL 05 PC SAJDA01C1YFL44194 00 JAGU
        042605              INER MD REC 052761
    WIN/V0072389
FRM/700 BLK 14TH ST NW
LOT/RELEASE TO OWNER

WALES RECORD FOUND      *** NCIC QV MSG    #41904        SENT BY PD0557 ***
                        *** NLET RQ MSG    #41904        SENT BY PD0557 ***

*** NCIC RESPONSE #41904      RCVD FOR DCMPD00T1/T6VA/PD0557 ***


DCMPD00T1
MKE/LOCATED STOLEN VEHICLE
ORI/MD0172100 LIC/X84VPW LIS/FL LIY/2005 LIT/PC
VIN/SAJDA01C1YFL44194 VYR/2000
VMA/JAGU VST/4D VCC/BLK DOT/20050424
OCA/051150247 20050426 DCMPD00T1 052761
NIC/V147366865 DTE/20050425 1743 EDT
ORI IS PRINCE GEORGES COUNTY POLICE DEPARTMENT 301 499-8113
IMMED CONFIRM RECORD WITH ORI

Page: 1 Document Name: untitled

ART/X84VPW/FL/05/PC/3

MISCELLANEOUS VEHICLE RECORD                    IND= 04/26/05 INT= 12:29 WALES ONLY
EX    DCMPD00T1 X84VPW    FL 05 PC SAJDA01C1YFL44194 00 JAGU
          042605            INER MD REC 052761
    WIN/V0072389
FRM/700 BLK 14TH ST NW
LOT/RELEASE TO OWNER

WALES RECORD FOUND       *** NCIC QV MSG    #41904           SENT BY PD0557 ***
                         *** NLET RQ MSG    #41904           SENT BY PD0557 ***

*** NCIC RESPONSE #41904        RCVD FOR DCMPD00T1/T6VA/PD0557 ***

DCMPD00T1
MKE/LOCATED STOLEN VEHICLE
ORI/MD0172100 LIC/X84VPW LIS/FL LIY/2005 LIT/PC
VIN/SAJDA01C1YFL44194 VYR/2000
VMA/JAGU VST/4D VCC/BLK DOT/20050424
OCA/051150247 20050426 DCMPD00T1 052761
NIC/V147366865 DTE/20050425 1743 EDT
ORI IS PRINCE GEORGES COUNTY POLICE DEPARTMENT 301 499-8113
IMMED CONFIRM RECORD WITH ORI

Date: 4/26/2005 Time: 12:34:01 PM

ART/X84VPW/FL/05/PC/3

MISCELLANEOUS VEHICLE RECORD
EX    DCMPD00T1 X84VPW        IND= 04/26/05 INT= 12:29 WALES ONLY
        042605        FL 05 PC SAJDA01C1YFL44194 00 JAGU
    WIN/V0072389              INER MD REC 052761
FRM/700 BLK 14TH ST NW
LOT/RELEASE TO OWNER

WALES RECORD FOUND        *** NCIC QV MSG    #41904        SENT BY PD0557 ***
                          *** NLET RQ MSG    #41904        SENT BY PD0557 ***

*** NCIC RESPONSE #41904        RCVD FOR DCMPD00T1/T6VA/PD0557 ***


DCMPD00T1
MKE/LOCATED STOLEN VEHICLE
ORI/MD0172100 LIC/X84VPW LIS/FL LIY/2005 LIT/PC
VIN/SAJDA01C1YFL44194 VYR/2000
VMA/JAGU VST/4D VCC/BLK DOT/20050424
OCA/051150247 20050426 DCMPD00T1 052761
NIC/V147366865 DTE/20050425 1743 EDT
ORI IS PRINCE GEORGES COUNTY POLICE DEPARTMENT 301 499-8113
IMMED CONFIRM RECORD WITH ORI

# ATTACHMENT 2

Jul-18-2006  03:40pm  From-

T-841   P.004/004   F-418

# Event Chronology

Event Number: I20050216510

| Date | Time | Term | Operat | Action |
|------|------|------|--------|--------|
| 04/25/05 | 21:31:23 | d02 | 1287 | EVENT CREATED: Location= 700 14TH ST NW DC , Cross Streets= G ST NW / NEW YORK AVE NW , Call |
| | | | |    Source= OFFICER |
| | | | | Agency= MPD , Group= 1D , Beat= 101 , Status= A , Priority= 3 , ETA= 0 , Hold Type= 0 , |
| | | | |    Primary Unit= 1011 , Primary Member= 6975 , Current= F , Open Current= F , Type Code= RSAU - |
| | | | |    RECOVERY OF STOLEN AUTO , SubType Code= CCN - CASE NUMBERS |
| | | | | Unit= 1011 , Status= DP , Location= 700 14TH ST NW DC , Employee= 6975 , Employee= 6845 |
| | | | | EVENT COMMENT= Field Event |
| | | | |    ON LOJACK HIT LG1SU...ON FL/X84VPW |
| 04/25/05 | 21:31:24 | d02 | 1287 | Unit= 1011 , Status= AR , Location= 700 14TH ST NW DC , Employee= 6975 , Employee= 6845 |
| 04/25/05 | 21:31:25 | cadcomm | 1287 | EVENT COMMENT= ** LOI search completed at 04/25/05 21:31:25 |
| 04/25/05 | 21:31:42 | d02 | 1287 | Unit= SB101 , Status= DP , Location= 700 14TH ST NW DC , Employee= 6154 |
| 04/25/05 | 21:31:44 | d02 | 1287 | Unit= SB101 , Status= AR , Location= 700 14TH ST NW DC , Employee= 6154 |
| 04/25/05 | 21:31:47 | d02 | 1287 | Unit= CR122 , Status= DP , Location= 700 14TH ST NW DC |
| 04/25/05 | 21:31:48 | d02 | 1287 | Unit= CR122 , Status= AR , Location= 700 14TH ST NW DC |
| 04/25/05 | 21:33:04 | d02 | 1287 | EVENT COMMENT= ORIG TIME 2128....D1287 |
| 04/25/05 | 21:44:44 | d02 | 1287 | Unit= 1041 , Status= DP , Location= 700 14TH ST NW DC , Employee= 6210 , Employee= 6305 |
| 04/25/05 | 21:44:56 | d02 | 1287 | Unit= 1041 , Status= ER , Location= T/C TP FOR 1011 , Employee= 6210 , Employee= 6305 |
| | | | | Unit= 1041 , Status= CL , Location= T/C TP FOR 1011 , Employee= 6210 , Employee= 6305 |
| 04/25/05 | 21:44:56 | cadcomm | 1287 | EVENT COMMENT= ** LOI search completed at 04/25/05 21:44:56 |
| 04/25/05 | 21:48:28 | d02 | 1287 | Unit= 1041 , Status= AR , Location= T/C TP FOR 1011 , Employee= 6210 , Employee= 6305 |
| 04/25/05 | 21:48:38 | d02 | 1287 | CASE NUMBER ASSIGNED= R2005052761 |
| | | | | Disposition Assigned= ASSNCASE |
| | | | | EVENT COMMENT= ** Case number R2005052761 has been assigned |
| | | | |    ** >>>> by: JACQUELIN E. WHITE on terminal: d02 |
| 04/25/05 | 21:48:48 | d02 | 1287 | EVENT UPDATED: Location= 700 14TH ST NW DC , Cross Streets= G ST NW / NEW YORK AVE NW , Call |
| | | | |    Source= OFFICER |
| | | | | Agency= MPD , Group= 1D , Beat= 101 , Status= A , Priority= 3 , ETA= 0 , Hold Type= 0 , |
| | | | |    Primary Unit= 1011 , Primary Member= 6975 , Current= F , Open Current= F , Type Code= UUV - |
| | | | |    UNAUTHORIZED USE OF VEHICLE , SubType Code= NOS3 - NUMBERS ONLY |
| | | | | EVENT COMMENT= ** Event Type changed from RSAU(CCN) to UUV(NOS3) at: 04/25/05 21:48:48 |
| | | | |    ** >>>> by: JACQUELIN E. WHITE on terminal: d02 |
| 04/25/05 | 21:48:56 | d02 | 1287 | Unit= 1011 , Status= ER , Location= T/C 1 ARREST , Employee= 6975 , Employee= 6845 |
| | | | | Unit= 1011 , Status= CL , Location= T/C 1 ARREST , Employee= 6975 , Employee= 6845 |
| 04/25/05 | 21:49:02 | cadcomm | 1287 | EVENT COMMENT= ** LOI search completed at 04/25/05 21:49:02 |
| 04/25/05 | 21:57:59 | d02 | 1287 | Unit= SB101 , Status= AV , Location= 700 14TH ST NW DC , Employee= 6154 |
| 04/25/05 | 22:03:01 | d02 | 1287 | Unit= CR122 , Status= AQ |
| 04/25/05 | 22:04:46 | d02 | 1287 | Unit= 1011 , Status= AR , Location= T/C 1 ARREST , Employee= 6975 , Employee= 6845 |
| 04/25/05 | 22:38:51 | d01 | 5784 | Unit= 1041 , Status= AR , Location= T/C TP FOR 1011 , Employee= 6210 , Employee= 6305 |
| 04/25/05 | 22:49:30 | d01 | 5784 | Unit= 1041 , Status= AV , Location= T/C TP FOR 1011 , Employee= 6210 , Employee= 6305 |
| 04/25/05 | 22:51:15 | d01 | 5784 | Agency= MPD , Group= 1D , Beat= 101 , Status= A , Priority= 3 , ETA= 0 , Hold Type= 0 , |
| | | | |    Primary Unit= 1011 , Primary Member= 6975 , Current= T , Open Current= F , Type Code= UUV - |
| | | | |    UNAUTHORIZED USE OF VEHICLE , SubType Code= NOS3 - NUMBERS ONLY |
| | | | | EVENT CLOSED: |
| | | | | Unit= 1011 , Status= AV , Location= T/C 1 ARREST , Employee= 6975 , Employee= 6845 |

# ATTACHMENT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALICIA Y. ALFRED, | |
| **Plaintiff,** | |
| v. | Civil Action No. 05-1446 (PLF) |
| DISTRICT OF COLUMBIA, | |
| **Defendant &** | |
| **Third Party Plaintiff,** | |
| v. | |
| THE LOJACK COMPANY, *et al.*, | |
| **Third Party Defendants.** | |

## AFFIDAVIT OF OFFICER MICHAEL F. FANONE

District of Columbia, ss:

I, **MICHAEL F. FANONE**, do swear and affirm that the following is true and accurate to the best of my knowledge, information and belief:

1.    I am a District of Columbia Metropolitan Police Officer, in the First District. I have served in that capacity since September 29, 2003. As such, it is my responsibility to patrol the streets of the District of Columbia to protect citizens from crime.

2.    On April 25, 2005, I was assigned to the First District. My tour of duty was from 2:00 p.m. to 10:30 p.m. My patrol car was equipped with a LoJack tracking device. My partner was Officer Im Sang. At about 9:30 p.m., Officer Sang and I located a vehicle that was emitting a LoJack signal. We tracked the vehicle for about twenty minutes. We stopped the vehicle in the 700 block of 14th Street, N.W., Washington, D.C.

3.    Officer Sang and I apprehended the individual in the vehicle and called the owner, Alicia Y. Alfred, to the scene. Ms. Alfred stated that the apprehended driver was her brother and that she wanted him arrested. Officer Sang and I arrested him for the "unauthorized use of a motor vehicle." This arrest was made towards the end of my tour of duty that night. Officer Sang and I completed the arrest paperwork past our tour of duty.

4.    It was my customary practice after a vehicle had been recovered, to call Teletype by telephone at the police station to report the recovery of the vehicle. I do not recall any variance in that routine regarding this vehicle recovery.

**OFFICER MICHAEL FANONE    May 31, 2007**
**D.C. Metropolitan Police Officer**

Subscribed and sworn to before me this    31st day of    May    , 2007.

My commission expires: 2/28/09    .

NOTARY PUBLIC

2

# ATTACHMENT 4

# NCIC 2000
# Operating Manual

December 1999

*Notice to Control Terminal Officers (CTOs)*:  This *NCIC 2000 Operating Manual* is available on Law Enforcement OnLine (LEO).  For information concerning a LEO account, please contact:  LEO Program Office, FBI CJIS Division, Room 11255, 935 Pennsylvania Avenue, N.W., Washington, D.C. 20535-0001  telephone: 202-324-8833.

*Notice to Terminal Agency Coordinators*:  Requests for additional copies of the *NCIC 2000 Operating Manual* should be directed to the state CTO.

May-24-2007  05:19pm  From-                                                    T-176  P.003  F-601

## SECTION 4--CANCELLATION

### 4.1    WHEN TO USE A CANCELLATION MESSAGE

Cancellation of a record is restricted to the agency that entered the record.  A cancellation message is used when the entering agency determines that the record is invalid, for example, a record that resulted from a fictitious or false theft report.  Any add-on vehicle or add-on part appended to a base vehicle record will be canceled when the base record is canceled. If the add-on vehicle or part has not been recovered with the vehicle, the stolen vehicle or part should be reentered as a base record.

The MKE XV must be used to cancel a stolen vehicle record; the MKE XF must be used to cancel a felony vehicle record.

### 4.2    EXAMPLE OF A CANCELLATION MESSAGE

1N01HEADER.XV.MD1012600.NIC/V000032699.OCA/A222.19991205.NOT STOLEN

**Acknowledgment:**

1L01HEADER
MD1012600
CANCEL NIC/V000032699

The above cancellation example contains:  header (1N01HEADER), message key (XV), Originating Agency Identifier (MD1012600), two record identifiers (NIC/V000032699 and OCA/A222), date of cancellation (19991205), and reason for property record removal (NOT STOLEN).

When a vehicle record is canceled, the entire record including all data appended to the record by means of an add-on record entry is automatically canceled.

### 4.3    MESSAGE FIELD CODES FOR CANCELLATION

| FIELD NAME | REQUIREMENTS | MESSAGE FIELD CODE | FIELD LENGTH | DATA TYPE |
|---|---|---|---|---|
| HEADER | MANDATORY | HDR | 9-19 | ALPHABETIC, NUMERIC, SPECIAL CHARACTERS |
| MESSAGE KEY | MANDATORY | MKE | 2-2 | ALPHABETIC |
| ORIGINATING AGENCY IDENTIFIER | MANDATORY | ORI | 9-9 | ALPHABETIC, NUMERIC |
| NCIC NUMBER | CONDITIONAL | NIC | 10-10 | ALPHABETIC, NUMERIC |

another computer search is automatically generated on the VIN contained in the record response. The automatic second search may retrieve up to 15 records from the Vehicle, Boat, Vehicle/Boat Part Files and/or person files if they contain a matching VIN, SER, or OAN, regardless of the LIC data used in the original inquiry.

4.  If the initial inquiry on license plate data retrieves 1) a person record with identical license data, a second search will be performed on the base VIN (or the oldest supplemental VIN if there is no base VIN), the base SOC, or the FBI number; 2) a Vehicle or Boat File record with add-on entries, a second search will be performed on a VIN contained in the add-on entry that has matching license data.

5.  An inquiry containing VIN or LIC can provide a secondary hit response from the NCIC 2000 person files when the primary hit contains a SOC or FBI number. When this happens, another search is automatically generated on the SOC and/or FBI number contained in the record response. The automatic second search may retrieve up to 15 matches of each from the person files for SOC or FBI number regardless of the VIN or LIC data used in the original inquiry

## 5.5   ADDITIONAL GUIDELINES FOR NCIC 2000 INQUIRY

1.  IMAGE INDICATOR (IND)

Inquiries submitted in an NCIC 2000 format may contain an Image Indicator (IND) to specify whether an image should be returned if available. If the IND is Y, an image related to each primary hit response, if available, will be returned (i.e., one identifying image for a vehicle record, one mugshot for a person record). If IND is not entered, the field will default to an N.

```
1N01HEADER.QV.WA1230000.LIC/ABC123.LIS/MD.VIN/2P4555P026483.
VMA/PONT.IND/Y.
```

The following would be returned after the immediate confirm caveat for a generic vehicle image:

```
IMR/VVMO:BON VST:SW
VYR:1995 VMA:PONT
IMN:I000001222 GENERIC VEHICLE              00256
<image>.
```

The Image Response (IMR) is composed of the following data: IMT (V for generic image) and standard vehicle MFCs (VST , VYR , and VMA). The IMN is next, followed by the image description (GENERIC VEHICLE). Following is the image size in bytes (00256), and, last, the <image> would be replaced with the actual image.

*INQUIRY*

The following would be returned after the immediate confirm caveat for an identifying vehicle image:

```
IMF./IVIN:2P4555P026483 LIC:ABC123 LIS:MD
VYF.:1995 VMA:PONT
NIC. of the base record is next V000032699 IMN:I000031222          00512
<image>.
```

The Image Response (IMR) is composed of the following data:  IMT (I for identifying image) and standard vehicle MFCs (LIC, LIS, VYR, and VMA).  The NIC of the base record is next, followed by the IMN.  Following the IMN is the image size in bytes (00512), and, last, the <image> would be replaced with the actual image.

2.      RELATED SEARCH HIT (RSH)

Inquiries may also contain a RSH Field.  If the RSH is Y, secondary hit responses will be returned for all records with the same ORI/OCA as the primary hit response and all records linked by the LKI/LKA contained in the primary hit response.

If the hit response contains more than ten secondary hit responses, the following will be included in the response to indicate a file is being created with the additional hits.

```
ADDITIONAL HITS AVAILABLE, FILE NOTIFICATION TO FOLLOW
```

A S.B. will then be sent to the ORI to identify the file name to be requested to retrieve the additional hit responses.  The File Transfer (FT) transaction in the Other Transactions chapter of this manual contains additional information on retrieving the file.

## 5.6    BATCH INQUIRY (QVB)

1.      The NCIC 2000 batch inquiry allows users to create a file of individual QV/ZV inquiries in one message.  Each inquiry is delimited by a sequence number (SEQ) at the beginning of the inquiry and an "&" as a separator.  The SEQ is three numerics and is used to match the responses (hit or no hit) to the specific inquiry from which they were generated.  Prior to each response SEQUENCE NUMBER: <SEQ> will be returned to identify those responses that follow as coming from the inquiry with that sequence number.  For example:

```
1N 01HEADER.QVB.DC1014300.001.VIN/WG723K1K6E76543214002.LIC/ABC123.
L1 5/MD.VIN/2P4555PO26836005.VIN/1K742B2GOD5432123&010.NIC/V123456789
```

Acknowledgment:

```
11.01HEADER
DC1014300
BATCH INQUIRY RECEIVED
```

*INQUIRY*

2.  The sequence numbers, as shown in the example, do not have to be sequential (001, 002, 005, 010), but they have to be unique. The HDR, ORI, MKE, and sequence number are entered without the MFC. The identifiers available in the QV/ZV inquiry are available for use in the QVB message, including the IND and the RSH indicators, and are preceded by the proper MFC.

3.  There is a limit of 1800 characters for a batch inquiry, including the header and all control characters.

4.  The user is notified of a file by the $.B. administrative message. The results of the batch must be retrieved by the user via a File Transfer (FT) message. The following is an example of the contents of a file:

```
1L01HEADER
DCL.014300

SEQUENCE NUMBER: 001
NO RECORD VIN/WG723K1K6E7654321

SEQUENCE NUMBER: 002

MKE/STOLEN VEHICLE
ORI/MD1012600 LIC/ABC123 LIS/MD LIY/1999 LIT/PC
VIN/2P4555PO2683 VYR/1996
VMA/FORD VMO/MUS VST/2D VCO/BLU DOT/20000110
OCA/ABC123
MIS/DENT IN LEFT REAR FENDER
OAN/0192837465VA
NIC/V723005317 DTE/20000112 1400 EST
ORI IS ANY CITY PD MD 301 555-1212
IMMED CONFIRM RECORD WITH ORI

SEQUENCE NUMBER: 005

NO RECORD VIN/1K742B2GOD5432123

**VERIFY VIN/1K742B2GOD5432123; IT DOES NOT CONFORM TO
     VIN STANDARDS FOR 1981 AND LATER VEHICLES.

SEQUENCE NUMBER: 010

NO RECORD NIC/V123456789
```

## 5.7    PROCEDURES FOR HANDLING A HIT

1.  An NCIC 2000 hit may not be probable cause to arrest. However, a hit confirmed with the ORI may be adequate grounds to take possession of a vehicle.

2.  When an agency receives a record(s) in response to an NCIC 2000 inquiry, and the whereabouts of the stolen vehicle inquired upon is known, and the vehicle inquired

*INQUIRY*

up:n appears to be identical with one or more of the records, the agency that can seize the stolen vehicle must contact the ORI of each record(s) to confirm the hit(s) prior to seizing the vehicle.

3. "To confirm the hit" means to verify that the theft report is still outstanding, to verify that the vehicle inquired upon is identical to the vehicle in the record, and to obtain information concerning the return of the vehicle to the rightful owner.

4. Standard hit confirmation procedures should be followed when a hit is received on a record for a vehicle subject to seizure. When the vehicle is located within the United States, the law enforcement officer should take possession of the vehicle. The officer must also contact either the entering agency or the office of the United States Marshals Service to execute the seizure order. When the vehicle is located outside of the United States, the law enforcement officer should contact the entering agency to determine if that agency will retrieve the vehicle.

5. This system is based on two levels of priority: urgent and routine, with a different response time governing each level. Hit confirmation procedures are detailed in the Introduction chapter of this manual.

## 5.8    CANADIAN VEHICLE INDEX INFORMATION

1. NCIC 2000 maintains an interface with the Canadian Police Information Centre (CPIC) that allows searchable identifiers in CPIC records to be transmitted to NCIC 2000 for storage and access, creating the Canadian Vehicle Index (CVI). The CVI contains stolen boat, part, vehicle, and license plate records, including U.S. registered vehicles and boats stolen in Canada. As with other NCIC 2000 responses, positive record responses must be confirmed with the originating agency.

2. Certain CPIC message fields and codes do not conform to NCIC 2000 formats; therefore, those specific fields will be omitted or adjusted where applicable. All inquiries that search the Vehicle File may generate responses from the CVI. A CVI record includes the following caveats: STOLEN VEHICLE IN CANADA; or FELONY VEHICLE IN CANADA; or STOLEN PART IN CANADA; etc.

**Positive Response:**

```
1L01HEADER
MD.012600

RECORD NIC/R723005317 IS A CANADIAN VEHICLE INDEX RECORD
CONFIRM RECORD WITH ORI

MKE/STOLEN VEHICLE IN CANADA
ORI/MB1012600 LIC/ABC123 LIS/ON LIY/1999 LIT/PC
VIN/WG723K1K6E7654321 VYR/1996
VMA/FORD
```

*INQUIRY*

```
OCA/ONDRE1234 CDE/19980110
NIC/R723005317 DTE/19980129 0000 EST
ORI IS ANYCITY, NAME OF PROVINCE, CANADA 333 555-1234
REPEAT - THIS IS A CANADIAN RECORD - CONFIRM WITH THE
ORIGINATING AGENCY IN CANADA
```

3.  A positive record response from the CVI must be confirmed with the Canadian Originating Agency as indicated in the record response. Canadian agency names, addresses, and telephone numbers can be obtained through a QO inquiry. For additional details, the inquiring agency can conduct an inquiry (QV) of the CPIC Vehicle Files utilizing the National Law Enforcement Telecommunications System, Inc.

*LOCATE*

## SECTION 6--LOCATE

**6.1    WHEN TO USE A LOCATE MESSAGE**

   1.      Any agency, except the agency that entered the record, that recovers a vehicle which
is indexed in NCIC 2000 must place a locate message on the active vehicle record(s).
When an agency receives a record or multiple records in response to an inquiry, the
agency that can seize the stolen vehicle must contact the ORI of each record possibly
identical with the vehicle in question to confirm the hit. Following confirmation with
the originating agency, a locate message must be transmitted for each record on file
for the vehicle.

   2.      The MKE LV should be used for locating a stolen vehicle record; the MKE LF for
locating a felony vehicle record.

   3.      Once a Vehicle File record has had a locate placed on it, it cannot be modified.

**6.2    EXAMPLE OF A LOCATE MESSAGE**

```
1N01HEADER.LV.WA1230000.NIC/V000032699.OCA/2325.19991205.5865.
HIT NCIC 19991204...10000.4000.9000
```

**Acknowledgment:**

```
1L01HEADER
WA1230000
LOCATE NIC/V000032699
```

The above locate example contains: header (1N01HEADER), message key (LV), recovering
agency identifier (WA1230000), two record identifiers (NIC/V000032699 and OCA/2325),
date of recovery (19991205), recovering agency case number (5865), and benefits and
effectiveness data:  reason for property record removal (HIT NCIC 19991204), value of
property recovered (10000), value of other recovered property (4000), and value of recovered
contraband (9000).

When a locate message is transmitted for a Vehicle File record, the message key translation
changes from STOLEN VEHICLE to LOCATED STOLEN VEHICLE, or from FELONY
VEHICLE to LOCATED FELONY VEHICLE, and the date of recovery, recovering agency
ORI, and recovering agency OCA are added to the record.

*CLEAR*

## SECTION 7--CLEAR

### 7.1   WHEN TO USE A CLEAR MESSAGE

1.   Clearance of a record is restricted to the agency that entered the record.  A clear message is transmitted:

     1.   When the agency recovering the vehicle is the agency that entered the record.

     2.   When the agency that entered the record is officially advised that the vehicle has been recovered by another agency.

2.   Any add-on vehicle or add-on part appended to a base vehicle record will be cleared when the base record is cleared.  If the add-on vehicle or part has not been recovered, a record must be reentered for the unrecovered vehicle or part.

3.   The appropriate MKE must be used to clear a vehicle record.  MKE CV must be used to clear a stolen vehicle record; MKE CF must be used to clear a felony vehicle record.

### 7.2   EXAMPLE OF A CLEAR MESSAGE

```
1N01HEADER.CV.MD1012600.NIC/V000032699.OCA/A222.19991005.WA1230000.
5865.HIT NCIC 19991003.4..1500..1000
```

**Acknowledgment:**

```
1L01HEADER
MD1012600
CLEAR NIC/V000032699
```

The above clear example contains:  header (1N01HEADER), message key (CV) Originating Agency Identifier (MD1012600), two record identifiers (NIC/V000032699 and OCA/A222), date of recovery (19991005), the recovering agency identifier (WA1230000), the recovering agency case number (5865), and benefits and effectiveness data:  reason for property record removal (HIT NCIC 19991003), number of persons apprehended (4), value of recovered property (1500), and value of recovered contraband (1000).

*CLEAR*

## 7.5 ADDITIONAL GUIDELINES FOR CLEAR

There are two circumstances that require unique record formats to clear a vehicle file record.

1. If the agency that entered the record recovers the vehicle, only the date of recovery (which cannot be prior to the date of theft) must be entered following the two record identifiers. Additionally, benefits and effectiveness data should be included.

2. If the vehicle file record is located by an agency other than the entering agency and:

    1. The record being cleared is in a located status (MKE/LOCATED VEHICLE or MKE/LOCATED FELONY VEHICLE), only the date of clear would be entered following the two record identifiers.

    2. The record being cleared is in an active status (MKE/STOLEN VEHICLE or MKE/FELONY VEHICLE), the date of clear followed by the recovering agency's identifier and the recovering agency's case number, in that order, without field codes would be entered after the two record identifiers. Additionally, benefits and effectiveness data should be included.

## 7.6 ADDITIONAL GUIDELINE FOR NCIC 2000 CLEAR

Following the date of recovery and recovering agency case number, users are expected to enter benefits and effectiveness data. The entry of benefits data is not MFC-dependent. Therefore, any field not entered should be accounted for with a period.

## 7.7 AUTOMATIC NOTIFICATION OF CLEAR

NCIC 2000 will automatically search the appropriate NCIC 2000 databases for duplicate vehicle records. If the VIN and VMA Fields of the record being cleared match another record or the LIC and either the LIS, LIY, or LIT match another record, a $.D. administrative message will be sent to the ORI of the duplicate record.

## SECTION 5--NCIC 2000 STANDARDS AND SANCTIONS

**5.1    STANDARDS**

The use of "effective communications" to help the criminal justice community perform its duties not only means providing access to and obtaining detailed information from pertinent computerized databases, but also includes the amount of time required to access the databases. While an entry, inquiry, or update message may contain specific and detailed information, the message (communication) could be very ineffective if it cannot be transmitted to the data center and a response cannot be received from the data center within a reasonable amount of time. It is not uncommon to hear of a hit occurring minutes after the record was entered. Restrictions have also been placed on the amount of time that a person may be detained while an inquiry is being made to determine whether a record is on file in a database. The rapid transmission of messages is extremely important, and standards were prepared to ensure that messages are transmitted and processed within a reasonable amount of time.

To ensure the integrity of the System, certain policies and standards must be completed, adopted, and followed. Through these policies and standards, a tool of measurement is provided against which the CJIS APB can measure the performance of the component parts of the System as a whole. These policies and standards also must address the specific areas of complaint of the "special" case situations.

**5.2    STANDARDS FOR INQUIRY RESPONSE TIME - HOT FILES (NON-III) FOR SINGLE HIT/NO IMAGE RESPONSES**

**High-Speed Line - Computer Interface**

1.    Average message response time for an inquiry from the CTA to NCIC 2000 and back to the CTA should not exceed 2 seconds.

2.    Average message response time from a CTA to an agency interfaced with the CTA should not exceed 12 seconds after transmission of the inquiry, with 2 of the 12 seconds allocated to the transmission to, processing by, and return of the response from NCIC 2000 as described in standard 1 above.

3.    Average message response time for an end-user terminal interfaced with a local/regional system which is interfaced with a CTA should not exceed 22 seconds after the transmission of the inquiry, with 12 of the 22 seconds allocated to the transmission to, processing by, and return of the response from the CTA and NCIC 2000 as described in standards 1 and 2 above.

4.    Average response time from any local/regional system or terminal interfaced directly with the NCIC 2000 computer (i.e., NCIC 2000 lines which terminate at an agency that is not a CTA) to an end-user terminal interfaced with the local/regional system

Note: Average time should be based upon a compilation over a 28-day period. Abnormal operating times, such as during the installation of a new computer, should be excluded from the one-month compilation.

## 5.4   STANDARDS FOR RECORD ENTRY BY USER AGENCY

1.   Any agency having investigative authority and jurisdiction and having an FBI CJIS-assigned ORI must enter records into NCIC 2000 which meet NCIC 2000 criteria as soon as reasonably possible after the minimum data for entry is available.

2.   The CTA shall be responsible for assuring that every agency which has a terminal or access to a terminal by some interagency agreement and has an FBI CJIS-assigned ORI and investigative authority and jurisdiction may enter records into NCIC 2000.

3.   Every agency that enters records destined for NCIC 2000 must assure that hit confirmation is available for all records, except III records, 24 hours a day either at that agency or through a written agreement with another agency at its location.

4.   Every agency is responsible for the removal of an NCIC 2000 record as soon as it is aware that the record is no longer valid.

5.   Average message response time for an entry from the CTA to NCIC 2000 and back to the CTA should not exceed 5 seconds.

6.   Average message response time from a CTA to an agency interfaced with the CTA should not exceed 20 seconds after transmission of the entry, with 5 of the 20 seconds allocated to the transmission to, processing by, and return of the response from NCIC 2000 as described in standard 5 above.

7.   Average message response time for an end-user terminal interfaced with a local/regional system which is interfaced with a CTA should not exceed 35 seconds after the transmission of the entry, with 20 of the 35 seconds allocated to the transmission to, processing by, and return of the response from the CTA and NCIC 2000 as described in standards 5 and 6 above.

8.   Average response time from any local/regional system or terminal interfaced directly with the NCIC 2000 computer (i.e., NCIC 2000 lines which terminate at an agency that is not a CTA) to an end-user terminal interfaced with the local/regional system shall not exceed 20 seconds, with 5 of the 20 seconds allocated to the transmission to, processing by, and return of the response from NCIC 2000 as described in standard 5 above.

1. Meet the NCIC 2000 entry criteria for the file involved;

2. Contain at least the minimum data required by NCIC 2000 for entry and up to the maximum number of identifiers permitted in the record by NCIC 2000; and

3. Contain any of the codes or data permitted by NCIC 2000 in each of the fields.

3.  Permission to enter a valid record regardless of the existence of any other record(s) already entered in NCIC 2000 by any other agency(s) for the person or property in question.

4.  The capability to add information to, delete information from, and/or change information in a field(s) of an existing NCIC 2000 record.

5.  The capability to remove a record from file when a record is determined to be invalid, e.g., the warrant which was the basis for an entry is dismissed or when the missing person or property which is the subject of the record is found.

6.  The capability to place a locate against another agency's NCIC 2000 record, including records entered by agencies serviced by the same CTA as well as records entered by agencies serviced by another CTA.

The use of the above services by any user agency shall be in accordance with the instructions and procedures contained in the *NCIC 2000 Operating Manual*, the codes contained in the *NCIC 2000 Code Manual*, and new enhancements contained in NCIC 2000 Technical and Operational Updates, CJIS *Information Letter*, or any other official notification from the FBI CJIS Division.

## 5.8    INTRODUCTION TO NCIC 2000 SANCTIONS

1.  Purging of an agency's NCIC 2000 records and discontinuance of System access for an agency are the two ultimate sanctions available to FBI CJIS management for enforcement of System policy and procedure. This presumes prosecution for law violations which would normally be handled at the state level and directed toward an individual rather than toward an agency.

    References to CTAs throughout this report include other agencies with direct NCIC 2000 lines when the inclusion is logical.

2.  Considerations

    1.  An up-to-date FBI CJIS/CTA User Agreement should be on file with the FBI CJIS Division, Programs Support Section, and the respective CTA. It should include reference to the sanctions that could be imposed for failure to comply.

2. Inaccuracy
3. Incompleteness
4. Unsatisfactory record quality
5. Unsatisfactory validation
6. Misuse of system notice of probationary status resulting from audit (30 days to correct deficiencies)
7. Serious error failure of a CTA to ensure compliance with hit confirmation policy

2. CTA to terminal agency

1. Untimeliness
2. Inaccuracy
3. Incompleteness
4. Unsatisfactory record quality
5. Unsatisfactory validation
6. Misuse of System
7. Notice of probationary status resulting from audit (30 days to correct deficiencies)
8. Serious error
9. Failure of the terminal agency to comply with hit confirmation policy

 Letter of intent to remove from System if deficiency not corrected

1. CJIS APB to CTA head

1. Continuous serious error trend
2. Audit failure status (not corrected within 30 days of first letter of request)
3. Intentional misuse of Purpose Codes in III
4. Continuous failure of CTA to ensure compliance with hit confirmation policy

2. CTA to terminal agency

1. Continuous serious error trend
2. Audit failure status (not corrected within 30 days of first letter of request)
3. Misuse of III
4. Continuous failure of the terminal agency to comply with hit confirmation policy

5. Advisory letter to state governor

1. FBI CJIS to governor with copy to CTA

# ATTACHMENT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ALICIA Y. ALFRED,**

        **Plaintiff,**

    **v.**

**DISTRICT OF COLUMBIA,**

        **Defendant &**
        **Third Party Plaintiff,**

    **v.**

**THE LOJACK COMPANY,** *et al.,*

        **Third Party Defendants.**

**Civil Action No. 05-1446 (PLF)**

## AFFIDAVIT OF SERGEANT IRVING CURRY

District of Columbia, ss:

1.    I am **SERGEANT IRVING CURRY**, Director of Teletype, a division of the District of Columbia Metropolitan Police Department.   I have been the director of that office since on or about October 15, 2006.

2.    As such, I am familiar with the process of reporting stolen vehicles and of reporting their recovery.

3.    The MPD Communications dispatcher informs the recovering officer over the radio whether the original report of the stolen vehicle is local or interstate. "Local" means that the vehicle was stolen in the District of Columbia and "interstate" means that the vehicle was stolen in a jurisdiction outside of the

District of Columbia. The officer then either has the vehicle towed or released to the owner.

4.   Thereafter, the recovering officer notifies Teletype by telephone of the facts surrounding the recovery of the vehicle, such as the type of vehicle, the make and model, the tag number, whether any arrests were made on the scene, whether the owner was notified and took possession of the vehicle, or whether the vehicle was towed, towed by whom and to where. Teletype does not record the vehicle owner's race. It is not the customary practice of Teletype to record or to make a record of such telephone calls from reporting officers. Teletype then enters the information provided into the National Crime Information Center ("NCIC") and Washington Area Law Enforcement System ("WALES") computer system and waits for a return message from the originating jurisdiction, here Prince Georges County. Prince Georges County is considered the originating agency because that is where Alicia Y. Alfred, the plaintiff in this case, reported that her vehicle was stolen.

5.   Within one hour of having been notified of the recovery, Prince Georges County must notify NCIC and WALES of the recovery. If there is no response in one hour, Teletype sends the message again, and waits another hour. If the originating agency never responds after the second notification, a third message is then sent, which triggers an automatic notice to the FBI of the non-responsiveness. The FBI then would contact the originating agency, Prince Georges County, directly.

6.    Through the NCIC and WALES system, the originating jurisdiction, Prince Georges County was notified in this case of the recovery. Because Prince Georges County, was the agency which put the vehicle into NCIC and WALES when plaintiff first reported it stolen, then Prince Georges County had to be the agency that took the vehicle out of the system by noting its recovery into NCIC and WALES.

7.    The Net Law Enforcement Telecommunications System ("NLETS") is the electronic communications system between Teletype and other jurisdictions, including Prince Georges County. Such communications are not automatically recorded or stored in an electronic folder. It is customary for the Teletype operator to print the NLETS depicted on the screen as the inquiries are being made and to save the printed hard copies. Although I searched, such hard copies have not been located in this case.

8.    In this particular case, the plaintiff reported the theft of her vehicle to the Prince Georges County Police, which entered it into NCIC and WALES as "stolen."

9.    It is the responsibility of the issuing agency where the vehicle was stolen to    take that information out of NCIC and WALES by reporting that the vehicle has been recovered.

10.    Here, it was the responsibility of the Prince Georges County Police Department to notify NCIC and WALES that the plaintiff's vehicle had been recovered on April 25, 2005.

11.    Once the Prince Georges County Police Department notified WALES and NCIC of the recovery of plaintiff's vehicle, it was then the responsibility of the LoJack Company to turn off the emitting signal on the plaintiff's vehicle.


**SERGEANT IRVING CURRY**
**Director, Teletype**
**D.C. Metropolitan Police Department**


Subscribed and sworn to before me this _____31_____ day of _____May_____ 2007.

My commission expires: _____March 31, 2010_____.


JULIA JOHNSON
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires March 31, 2010

NOTARY Public

4