**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALICIA Y. ALFRED,**<br>　　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**DISTRICT OF COLUMBIA,**<br>　　　　　　**Defendant &**<br>　　　　　　**Third Party Plaintiff,**<br><br>　　　　v.<br><br>**THE LOJACK COMPANY,**<br>　　　　　　**Third Party Defendant.** | **Civil Action No. 05-1446 (PLF)** |

## DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF

Defendant District of Columbia (the "District"), by and through its undersigned counsel, and pursuant to SCR-Civil 56, respectfully requests that the Court enter judgment in its favor on all counts of plaintiff's Complaint. As explained more fully in the accompanying Memorandum of Points and Authorities, and Statement of Undisputed Material Facts, even when construing the facts in the light most favorable to plaintiff, plaintiff cannot prevail on her claims in this lawsuit, and defendant is entitled to judgment as a matter of law against both plaintiff.

　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　LINDA SINGER
　　　　　　　　　　　　Attorney General for the District of Columbia

　　　　　　　　　　　　GEORGE C. VALENTINE
　　　　　　　　　　　　Deputy Attorney General
　　　　　　　　　　　　Civil Litigation Division

      /s/
_____
NICOLE L. LYNCH [D.C. Bar #471953]
Chief, General Litigation, Section II

      /s/
_____
URENTHEA McQUINN [D.C. Bar  #182253]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C.  20001
(202) 724-6646
(202) 727-3625 (Fax)
urenthea.mcquinn@dc.gov


September 28, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ALICIA Y. ALFRED,**
     **Plaintiff,**

  **v.**              **Civil Action No. 05-1446 (PLF)**

**DISTRICT OF COLUMBIA,**
     **Defendant &**
     **Third Party Plaintiff,**

   **v.**

**THE LOJACK COMPANY,**
     **Third Party Defendant.**

### DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

(1) Plaintiff asserts that, on April 25, 2005, she discovered at her home in Suitland, Maryland that her car had been stolen, and that she reported the theft to the Prince Georges County Police Department.  (Second Amended Complaint, ¶¶ 7 and 8.) The Prince Georges County Police entered plaintiff's vehicle into the interstate computer systems as "stolen."  (Second Amended Complaint, ¶ 12.)

(2) On April 25, 2005, at about 9:48 p.m., District of Columbia Metropolitan Police Department ("MPD") Officer Michael Fanone telephoned plaintiff and informed her of the recovery of her vehicle at 700 14th Street, N.W., in Washington, D.C.  See the Second Amended Complaint, ¶ 13; MPD Event Chronology Report, **Attachment 1**; and the Affidavit of Officer Michael F. Fanone, **Attachment 2**.

(3) Officer Fanone and his partner, Officer Im Sang, waited for plaintiff to arrive on the scene.  At the scene of the recovery, plaintiff identified the person who stole her

car as her brother, Ramon Taylor, and asked that he be arrested.  (Alfred Deposition (8/29/07), 17:9-12, **Attachment 3**)   MPD did arrest plaintiff's brother for the Unauthorized Use of a Vehicle.  Affidavit of Officer Michael F. Fanone, ¶ 3.  The recovery and the arrest ended at April 25, 2005 at 22:51:15, or 10:51 p.m.  See **Attachment 1**.

(4)    Plaintiff alleges that shortly after midnight on April 26, 2005, two MPD officers told her that her vehicle was still emitting the LoJack "stolen vehicle" signal. (Second Amended Complaint, ¶¶ 26 through 30.)

(5)    Nevertheless, on the morning of April 26, 2005, plaintiff drove her vehicle to work in Arlington County, Virginia.  At approximately 11:15 a.m., plaintiff left her workplace and began to drive her car to get lunch. At that time, the Arlington County Police Department detained her because her vehicle was still emitting the LoJack signal as stolen.  (Second Amended Complaint, ¶¶ 36 through 128.)

(6)    With sirens blaring and lights flashing, the Arlington County, Virginia police officers blocked plaintiff's car across three lanes of traffic when she tried to drive away from her job.  (Second Amended Complaint, ¶ 39.)  With guns pointed at plaintiff, the Arlington County police officers handcuffed plaintiff in front of her co-workers. (Second Amended Complaint, ¶¶ 39 through 57.)  There were at least eight Arlington County police officers and four Arlington County police cars on the scene all with roof lights flashing.  (Second Amended Complaint, ¶ 88)  Plaintiff was detained in handcuffs by the Arlington County police for over an hour well into the afternoon.  (Second Amended Complaint, ¶ 122; Alfred Deposition (8/29/07), 38:4-9, **Attachment 3**)

(7)    The NCIC printout in this case has a date on it of April 26, 2005, and a time of 12:29 p.m. (**Attachment 4**).

(8)    According to Sergeant Irving Curry, MPD Director of Teletype, it is the responsibility of the Prince Georges County Police Department to notify NCIC and WALES that the plaintiff's vehicle had been recovered on April 25, 2005. (Affidavit of Sergeant Irving Curry (5/31/07), **Attachment 5**)

(9)    On April 25 and 26, 2005, plaintiff did not know the race of any of the individuals in the District of Columbia Teletype or Communications Office. (Alfred Deposition (8/29/07), 56:18-21; 57:1-15, **Attachment 3**)

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
NICOLE L. LYNCH [D.C. Bar #471953]
Chief, General Litigation, Section II

_____/s/_____
URENTHEA McQUINN [D.C. Bar #182253]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C.  20001
(202) 724-6646
(202) 727-3625 (Fax)
urenthea.mcquinn@dc.gov

September 28, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALICIA Y. ALFRED,** | |
| **Plaintiff,** | |
| | |
| **v.** | **Civil Action No. 05-1446 (PLF)** |
| | |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant &** | |
| **Third Party Plaintiff,** | |
| | |
| **v.** | |
| | |
| **THE LOJACK COMPANY,** | |
| **Third Party Defendant.** | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S
MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF</u>**

Defendant District of Columbia (the "District"), by and through its undersigned counsel, and pursuant to SCR-Civil 56, respectfully moves that the Court enter judgment in its favor on all counts of plaintiff's Complaint.

***Facts***

This action, initially brought by plaintiff on July 22, 2005, alleges in the Second Amended Complaint that defendant District of Columbia committed negligence (Count I) and a violation of 42 USC § 1981 (Count II) on April 25, 2005.  Plaintiff asserts that she discovered at her home in Suitland, Maryland that her car had been stolen, and that she reported the theft to the Prince Georges County Police Department on that same day. (Second Amended Complaint, ¶¶ 7 and 8.)  The Prince Georges County Police entered plaintiff's vehicle into the interstate computer systems as "stolen."  (Second Amended Complaint, ¶ 12.)

On April 25, 2005, at about 9:48 p.m., District of Columbia Metropolitan Police Department ("MPD") Officer Michael Fanone telephoned plaintiff and informed her of the recovery of her vehicle at 700 14th Street, N.W., in Washington, D.C. See the Second Amended Complaint, ¶ 13; the MPD Event Chronology Report, **Attachment 1**; and **Attachment 2**. Officer Fanone and his partner, Officer Im Sang, then waited for plaintiff to arrive on the scene. At the scene of the recovery, plaintiff identified the person who stole her car as her brother, Ramon Taylor, and asked that he be arrested. (Alfred Deposition (8/29/07), 17:9-12, **Attachment 3**). MPD did arrest plaintiff's brother for the Unauthorized Use of a Vehicle. Affidavit of Officer Michael F. Fanone, ¶ 3, **Attachment 2**. The recovery and the arrest ended at April 25, 2005 at 22:51:15, or 10:51 p.m. See **Attachment 1**.

The recovering officer notifies Teletype by telephone of the facts surrounding the recovery of the vehicle, such as the type of vehicle, the make and model, the tag number, whether any arrests were made on the scene, whether the owner was notified and took possession of the vehicle, or whether the vehicle was towed, towed by whom and to where. Teletype does not record the vehicle owner's race. See ¶ 4 of the Affidavit of Sergeant Irving Curry, Attachment 5. It is not the customary practice of Teletype to record or to make a record of such telephone calls from reporting officers. Teletype then enters the information provided into the NCIC and WALES computer system and waits for a return message from the originating jurisdiction, here Prince Georges County. *Id*., ¶ 4.

After Officer Fanone's tour of duty ended at approximately 10:30 p.m., he telephoned all such recoveries to Teletype when he returned to the police station. See his

affidavit, **Attachment 2**. Sergeant Curry states that Teletype immediately conveys this information to the jurisdiction that must contact the WALES and the NCIC if the matter is interstate, as here. Here, it was the responsibility of the Prince Georges County Police Department to notify the WALES and the NCIC that the plaintiff's vehicle had been recovered on April 25, 2005. Once the Prince Georges County Police Department notified the WALES and the NCIC of the recovery of plaintiff's vehicle, it was then the responsibility of the LoJack Company to turn off the emitting signal on the plaintiff's vehicle. See **Attachment 5**, the Affidavit of Sergeant Irving Curry.

Plaintiff alleges that shortly after midnight on April 26, 2005, two other MPD officers told her that her vehicle was still emitting the LoJack "stolen vehicle" as she drove it in the District. (Second Amended Complaint, ¶¶ 26 through 30.) Nevertheless, a few hours later in the morning of April 26, 2005, plaintiff drove her vehicle to work in Arlington County, Virginia. At approximately 11:15 a.m., on April 26, 2005, plaintiff left her workplace and began to drive her car to get lunch. At that time, the Arlington County Police Department detained her because her vehicle was still emitting the LoJack signal as stolen. (Second Amended Complaint, ¶¶ 36 through 128.)

With sirens blaring and lights flashing, the Arlington County police officers blocked plaintiff's car across three lanes of traffic when she tried to drive away from her job. (Second Amended Complaint, ¶ 39.) Plaintiff alleges that with guns drawn, the Arlington County police officers handcuffed plaintiff in front of her co-workers until they could ascertain that the vehicle was not stolen. (Second Amended Complaint, ¶¶ 39 through 57.) There were at least eight Arlington County police officers and four Arlington County police cars on the scene all with roof lights flashing. (Second

Amended Complaint, ¶ 88)  Plaintiff was detained in handcuffs by the Arlington County police for over an hour well into the afternoon.  (Second Amended Complaint, ¶ 122; Alfred Deposition (8/29/07), 38:4-9, **Attachment 3**)  Plaintiff alleges that she was held at gunpoint for an excessive period of time even after she directed the Arlington police to license, registration and insurance card all of which identified plaintiff as the owner of the vehicle.

The National Crime Information Center ("NCIC") printout in this case has a date on it of April 26, 2005, and a time of 12:29 p.m.  (**Attachment 4**).  According to Sergeant Irving Curry, Director of Teletype, a division of the MPD, it is the responsibility of the Prince Georges County Police Department to notify NCIC and THE Washington Area Law Enforcement System ("WALES") that the plaintiff's vehicle had been recovered on April 25, 2005.  (Affidavit of Sergeant Irving Curry (5/31/07), **Attachment 5**)

On April 25 and 26, 2005, plaintiff did not know the race of any of the individuals in the District of Columbia Teletype or Communications Office.  (Alfred Deposition (8/29/07), 56:18-21; 57:1-15, **Attachment 3**)

### *Standard of Review*

### **Motion for Summary Judgment**

Summary judgment must be granted if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Although the party moving for summary judgment has the burden of demonstrating the absence of any material facts and the right to judgment as a matter of law, the movant is

not obligated to present supporting evidence. *Furguson v. District of Columbia*, 629 A.2d 15, 19 (D.C. 1993). Instead, the moving party need only assert that there is a lack of necessary evidence to support plaintiff's case. At that point, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact. *Id.; Beard v. Area Transit Authority,* 631 A.2d 387, 390 (D.C. 1993). Theoretical speculations, unsupported assumptions, and conclusory allegations do not rise to the level of genuine issues of fact. *Id.*

> SCR-Civil 56(c) provides that summary judgment:
>
> [s]hall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Once a movant for summary judgment has made the required showing under the rule, the burden shifts to the opposing party to show the existence of an issue of material fact. *See Nader v. de Toledano*, 408 A.2d 31, 48 (D.C. 1979), *cert. denied*, 444 U.S. 1078 (1980). A motion for summary judgment should be granted unless the party opposing the motion counters the factual allegations with specificity. *See Miller v. American Coalition of Citizens*, 485 A.2d 186, 191 (D.C. 1984).

Moreover, pursuant to SCR-Civil 56(e), a party opposing a summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading." Instead, to survive summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." SCR-Civil 56(e). Summary judgment must be granted if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*, *supra,* 477 U.S. at 330.

*Argument*

## I.    PLAINTIFF HAS FAILED TO PROVE THAT DEFENDANT VIOLATED HER RIGHTS UNDER 42 USC § 1981.

In Count II of the Second Amended Complaint, ¶¶ 139 through 141 (2/13/06), plaintiff claims a violation of 42 U.S.C. § 1981 herein.  Plaintiff, however, has failed to prove a violation of this statute.   42 USC § 1981 provides as follows:

> § 1981.  Equal rights under the law
> (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
> (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.
> History:
>    (R.S. § 1977; Nov. 21, 1991, P.L. 102-166, Title I, § 101, 105 Stat. 1071.)

Plaintiff has failed to prove her claim under this provision.  Although asked through written discovery and deposition, plaintiff has never stated what contractual relationship she claims was damaged by defendant District of Columbia, produce any contract or proved any discrimination based upon her race.  (Alfred Deposition (8/29/07), 44:19-21; 45:1-20, **Attachment 3**).

This case is devoid of any proof that defendant District of Columbia denied plaintiff equal protection to make or enforce a contract based upon her race, or interfered with plaintiff's rights based upon her race. Plaintiff admitted at deposition that she did not know the race of the persons in the MPD's Teletype and Communications Divisions. (Alfred Deposition (8/29/07), 56:18-21; 57:1-15, **Attachment 3**). Further, there is no evidence that persons responsible for updating plaintiff's information regarding her vehicle knew her race. Officer Fanone testified that he reported to Teletype that plaintiff's vehicle had been recovered. There is no evidence that anyone at Teletype and Communications knew the race of plaintiff. As these are the divisions responsible for inputting or updating the information about plaintiff's vehicle, there could not be any discriminatory motive if they did not know plaintiff's race. There is no way for this Court to make a determination with regard to a violation of 42 U.S.C. § 1981 where plaintiff refused to provide evidence of what contract is involved and admits that she does not even know the race of the persons whom she claims were infringing upon her rights based upon her race. (Alfred Deposition (8/29/07), 44:19-21; 45:1-20, **Attachment 3**). There has been no evidence of racial discrimination in this case.

II.     **PLAINTIFF'S CLAIM UNDER 42 U.S.C. § 1981 SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE THAT A CUSTOM OR POLICY OF THE DISTRICT VIOLATED HER RIGHTS.**

Count II of the Second Amended Complaint, violation of 42 U.S.C. § 1981, is not supported by the facts of this case. In order to maintain a claim against the District under 42 U.S.C. § 1981, plaintiff must allege and establish that a custom or policy of the Defendant was the moving force that caused her harm. *Jett v. Dallas Independent School District,* 491 U.S. 701, 710-737 (1989). Since plaintiff has failed to make such allegations and indeed cannot prove that a custom or policy of defendant, which was

approved by one of the defendant's policymakers was the cause of her alleged injuries, Count I should be dismissed and judgment entered for the District.

In 1987, when *Jett* was decided, 42 U. S. C. § 1981 provided that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other."

The statute did not provide for liability against the government. *Jett, supra*.

In *Jett*, however, the Supreme Court addressed two critical issues relating to municipal liability under §1981. In *Jett*, an employment discrimination case, a white teacher sued the principal and school district claiming that his termination from his coaching job was because of his race. Plaintiff brought suit under §§1981 and 1983. First, the Supreme Court held that §1983 was plaintiff's exclusive remedy for any alleged violations of his rights, and under §1983 the school district could not be held liable under a theory of *respondeat superior*. *Jett*, 491 U.S. at 731. Second, and on point with the issues in the instant case, the Supreme Court held that the "custom and policy" analysis announced in *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978), applies to municipal liability under §1981. *Jett*, 491 U.S. at 731.

In 1991, the Civil Rights Act of 1991, §101 amended §1981 by adding two subsections, one of which was § 1981(c). This new subsection provides that "the rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."   42 U.S.C. § 1981(c). Thus,

the 1991 amendment to §1981 provided for direct liability against government entitles and reversed the Supreme Courts' holding in *Jett* as to this question only.

The amendment did not, however, effect the Supreme Court's holding as to the custom and policy required. *Powell v. City of Pittsfield,* 143 F. Supp. 2d 94, 110-114 (D. Mass. 2001). Since the 1991 amendment to §1981, courts have consistently applied the custom and policy analysis to §1981 claims against municipalities. *Medina v. District of Columbia* 2007 U.S. Dist. (Decided June 6, 2007) (Sullivan, J.) (custom and policy analysis applied to a violation of rights under §1981); *Taylor, et al. v. District of Columbia Water & Sewer Authority,* 241 F.R.D. 33, n5 (Decided March 13, 2007) (Kennedy, J) (The requirement of a common policy applies to intentional discrimination under Section 1981); *Federation of African Am. Contractors*, *et al. v. City of Oakland, et al.,* 96 F.3d 1204, 1215 (Ninth Cir. 1996); *Johnakin v. City of Philadelphia*, 1996 U.S. Dist. LEXIS 445, No. Civ. A. 95-1588, 1996 WL 18821, at *4 (E.D. Pa. Jan. 18, 1996); *Gallardo v. Bd. Of County Comm'rs*, 857 F. Supp. 783, 786-87 (D. Kan. 1994); *see also Philippeaux v. N. Cent. Bronx Hosp.*, 871 F. Supp. 640, 654-56 (S.D.N.Y. 1994) (not resolving whether section 1981(c) overturns *Jett*'s first principal, but holding that "policy or custom" must yet be established). Thus, in order to maintain a claim against the District under §1981, Plaintiff must still allege and prove that her injuries were caused by a custom or policy approved by a District policymaker in accordance with *Monell, supra.*

As explained in *Monell*, the District can be held liable for Plaintiff's constitutional claims under 42 U.S.C. § 1983 only if the Plaintiff proves facts that indicate her injury was caused by a policy or custom of the District. 436 U.S. 658, 694 (1978); *see also City*

*of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). To show that a municipal custom or policy caused a constitutional violation, Plaintiff must do more than identify conduct attributable to the municipality. *Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404.* Plaintiff must "show fault on the part of the city based on a course of action its policy-makers consciously chose to pursue." *Carter v. Dist. of Columbia, 254 U.S. App. D.C. 71, 795 F.2d 116, 122 (D.C. Cir. 1986).* That conduct must be "the moving force of the constitutional violation." *Monell, 436 U.S. at 694.*

In *Baker v. District of Columbia,* the D.C. Circuit Court stated that a plaintiff can establish a municipal custom or policy by:

> the explicit setting of a policy by the government that violates the Constitution, the action of a policy maker within the government, the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,' or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations.

326 F.3d 1302, 1306-07 (D.C. Cir. 2003). A policy maker, for the purposes of municipal liability, is an official who has discretion to exercise particular functions assigned and to establish final government policy respecting activity. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83; *see also Morgan v. Barry*, 785 F. Supp. 187, 194 (D.D.C. 1992) ("the authority to make policy that will give rise to municipal liability is final policy . . . . The District of Columbia can be held responsible under § 1983 for the eviction of the plaintiff if it was the product of a sanctioned policy ordered or allowed to exist by a municipal official with final policymaking authority in that area.").

In the District of Columbia, the Mayor and the Chief of Police are MPD's policymakers. The Mayor's authority over MPD is established by DC Code § 5-101.03 (2001 edition), which provides:

> It shall be the duty of the Mayor of the District of Columbia at all times of the day and night within the boundaries of Police District:
>
> (3) To protect the rights of persons and property . . . .

The Chief of Police's policymaking authority is found in District of Columbia Municipal Regulations. Title 6A, § 800.3 provides:

> The Chief of Police shall promulgate all orders, rules and regulations of the Mayor or Council which pertain to the work of the Metropolitan Police Department, and shall issue those instructions, and promulgate those orders, rules, and regulations, not inconsistent with the law or with the overall D.C. Government policy, as he or she may deem proper in the exercise of his or her functions as chief executive of the department.

Plaintiff has not established that a custom or policy of the defendant caused her alleged injury under 42 U.S.C. § 1981. Moreover, there is no evidence to establish that the Mayor or the Chief of Police set a policy that violated any of plaintiff's constitutional rights. Plaintiff also does not establish that the Mayor or the DCMPD Chief of Police was deliberately indifferent to her constitutional rights. Plaintiff merely alleges that MPD employees violated her rights under 42 U.S.C. § 1981. Thus, the defendant's custom or policy was not the "moving force" behind the alleged violation of Plaintiff's constitutional rights. The Court, therefore, should dismiss Count II of Plaintiff's complaint.

**III.    PLAINTIFF HAS NOT PRODUCED ANY EVIDENCE OF NEGLIGENCE AGAINST THE DISTRICT OF COLUMBIA.**

Plaintiff has not produced evidence that the District of Columbia was the proximate cause of plaintiff's injuries.  "In order to prevail in a negligence action, the plaintiff must prove 'the applicable standard of care, a deviation from that standard of care by the defendant, and a causal relationship between that deviation and the plaintiff's injury.'"  *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997), quoting *Etheridge v. District of Columbia*, 635 A.2d 908, 917 (D.C. 1993); *Messina v. District of Columbia*, 663 A.2d 535, 537 (D.C. 1995); *accord Clark v. District of Columbia*, 708 A.2d 632, 634 (D.C. 1997).

Plaintiff herein has not produced any competent evidence to prove that defendant was the proximate cause of her excessive force allegations against the Arlington County Police.  Defendant District of Columbia presented extensive discovery, but plaintiff has not produced any information or documents that dispute the statement in Officer Fanone's affidavit that he followed his customary practice, after plaintiff's vehicle was recovered, and called Teletype by telephone at the police station to report the recovery of the vehicle.  Officer Fanone does not recall any variance in that routine regarding the recovery of plaintiff's vehicle.

Plaintiff has not established supporting evidence for the element of proximate cause as to the District herein.  She has not produced any competent evidence to prove that defendant did anything to cause her subsequent detention by the Arlington County, Virginia Police Officers.  Plaintiff has not produced any information or documents, which support her contention that defendant was the proximate cause of any of the incidents in this case.  Bare allegations won't suffice at the summary judgment stage.  Several parties

were involved in the processing of plaintiff's stolen vehicle, and plaintiff has failed to prove a violation of any standard of care as to the District.

By the time discovery closed, plaintiff had not produced evidence of the District of Columbia having been the cause of plaintiff injuries at the hands of the Arlington County, Virginia Police Department. Nor can it be said that the excessive force utilized by the Arlington County police was foreseeable. Indeed, it was not. It was unforeseeable that plaintiff would be taken from her car at gunpoint by two of the officers, Alfred Deposition (8/29/07), 34:16-18, although dressed in her United States Air Force military blue uniform, Alfred Deposition (8/29/07), 34:19, outside of her office building in Rosslyn, Virginia, Alfred Deposition (8/29/07), 8:15, handcuffed behind her back, and held by the Arlington County police for over almost two hours, Alfred Deposition (8/29/07), 38:4-9, while the Arlington County police ascertained the true ownership of her vehicle, after she had directed them to her license, registration and insurance identification. It was unforeseeable that the Arlington County officers would not let her supervisor and commanding officer, Miles Cocanour, explain anything to them, but, instead, made him go back onto the sidewalk. Alfred Deposition (8/29/07), 36:7-13. It was unforeseeable that the Arlington County officers would find plaintiff's registration, read it and still detain her. Alfred Deposition (8/29/07), 35:19-21. Thus, it was the Arlington County Police who were the proximate cause of plaintiff's injuries, and the actions of the Arlington County Police in this traffic stop were unforeseeable in that they were prolonged and extreme given the circumstances and the clarifying information readily available to them.

### IV.    PLAINTIFF WAS CONTRIBUTORILY NEGLIGENT BY DRIVING TO WORK AFTER HAVING BEEN TOLD THAT HER CAR WAS STILL EMITTING THE LOJACK SIGNAL.

Plaintiff was negligent when she left her home for work in her car after she had been told by District of Columbia Police that her car was still emitting the LoJack signal. Plaintiff alleged in her Second Amended Complaint that shortly after midnight on April 26, 2005, two other District of Columbia police officers told her that her vehicle was still emitting the LoJack "stolen vehicle" signal.  (Second Amended Complaint, ¶¶ 26 through 30)  Plaintiff knowingly left for work the next morning of April 26, 2005 at 6:30 a.m. without calling the police or LoJack to check on the status.  Alfred Deposition (8/29/07), 30:18-21; 31:1-21; 32:1-21, **Attachment 3**).

Plaintiff also was negligent in not calling LoJack immediately.  According to her at deposition: "… actually I called LoJack two days after the incident.  LoJack said they cannot remove me out of the system, it was no need to call LoJack, they could not remove me out of system."  Alfred Deposition (8/29/07), 32:18-21; 31:1 **Attachment 3**).

It was the responsibility of Prince Georges County to report plaintiff's vehicle to the NCIC and WALES as recovered, and then, it was the responsibility of LoJack to turn off the emitting signal.  See Section 4.1 of the NCIC 2000 Operating Manual (December, 1999), **Attachment 6**, and the Affidavit of Sergeant Irving Curry, ¶¶ 8, 9, 10 and 11, **Attachment 5**.  However, plaintiff stated at deposition that "… actually I called LoJack two days after the incident.  LoJack said they cannot remove me out of the system, it was no need to call LoJack, they could not remove me out of system."  Alfred Deposition (8/29/07), 32:18-21; 31:1 **Attachment 3**).

Through the NCIC and WALES system, the originating jurisdiction, Prince Georges County was notified in this case of the recovery. *Id.* ¶ 5. It is the responsibility of the issuing agency where the vehicle was stolen to  take that information out of NCIC and WALES by reporting that the vehicle has been recovered. *Id.* ¶ 9. Because Prince Georges County was the agency which put the vehicle into NCIC and WALES when plaintiff first reported it stolen, then Prince Georges County had to be the agency that took the vehicle out of the system. *Id.* ¶ 6. After that occurred, it was the responsibility of LoJack to turn off the emitting signal. *Id.* ¶ 11.

## V.    IF THE COURT DISMISSES PLAINTIFF'S 42 U.S.C. § 1981 CLAIM, SUPPLEMENTAL JURISDICTION SHOULD NOT BE EXERCISED OVER THE REMAINING STATE COMMON LAW NEGLIGENCE CLAIM.

In the alternative, even if the plaintiff had properly alleged intentional infliction of emotional distress, this common law claim should be dismissed for lack of subject matter jurisdiction. Absent any constitutional or federal statutory claims, this Court may decline to exercise supplemental jurisdiction over any common law claims asserted by the plaintiff. *See* 28 U.S.C. § 1368(c)(3). Furthermore, the Supreme Court has written that, once federal claims have been dismissed, a District Court *should* dismiss pendent state law claims.

In *Gaubert v. Gray*, the D.C. District Court dismissed the plaintiff's constitutional claims on the grounds of qualified immunity. 747 F. Supp. 40, 50 (D.C. Cir. 1990). Noting that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right," the court also dismissed the plaintiff's four common law claims. *Id.* Citing the Supreme Court's decision in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), the District Court wrote:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *Gaubert*, 747 F. Supp. at 50.

Likewise, in this case, without the federal claim, there is no substantive reason for this Court to retain jurisdiction over this case. Therefore, if plaintiff's federal claim fails at this stage of this litigation, the court should decline to exercise supplemental jurisdiction and dismiss plaintiff's supplemental common law negligence claim as well.

### *Conclusion*

For all of the reasons set forth above, defendant respectfully requests that the Court enter judgment in its favor.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
NICOLE L. LYNCH [D.C. Bar #471953]
Chief, General Litigation, Section II

_____/s/_____
URENTHEA McQUINN [D.C. Bar #182253]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6646
(202) 727-3625 (Fax)
urenthea.mcquinn@dc.gov